## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LORREYNE RAMOS<br><br>**Plaintiff**<br><br>v.<br><br>MEGAN J. BRENAN,<br>POSTMASTER GENERAL<br>UNITED STATES POSTAL SERVICE.<br><br>**Defendants** | CIVIL NO.<br><br><br><br>PLAINTIFF REQUESTS TRIAL BY JURY |

### COMPLAINT

TO THE HONORABLE COURT:

COMES NOW the Plaintiff through the undersigned counsel, who respectfully states, alleges and requests as follows:

### I. PARTIES

1. Plaintiff Lorreyne Ramos is of legal age, employee of the United States Postal Service, with residence and domicile in Altura de Cerro Gordo III IV, A4 del Coral, Vega Alta, Puerto Rico, 00692. Her postal address is PO Box 1536, Dorado, PR 00646 and her phone number is 787-449-9721.

2. Megan J. Brenan is the Postmaster of the United States Postal Service (USPS) which is an independent establishment of the executive branch of the United States, created and governed by the Postal Reorganization Act ("PRA), 39 U.S.C. ss 101-5605.

## II. JURISDICTION AND VENUE

3. This is a Civil action brought pursuant to Title VII of the Civil Rights of 1964, sec; as Amended 42 USC 2000(e) et seq.; and the Postal Service Act- 39USC 101 et seq..

4. Plaintiff lives within the jurisdiction of the Commonwealth of Puerto Rico and because the unlawful employment practice and violation complained off occurred within the District of Puerto Rico, proper venue is the United States District Court of Puerto Rico.

## III. PROCEDURAL FACTS OF THE CASE

5. At all times relevant to the facts of this complaint, the plaintiff was employed as a full time regular (FTL) Sales, Services/Distribution Associate (SSDA) at Toa Alta Post Office in Toa Alta, Puerto Rico.

6. At all times relevant to the facts of this complaint, Postmaster Héctor Padro was Plaintiff's Supervisor.

7. On March 11, 2016 Plaintiff requested EEO pre-complaint counseling under the EEO process alleging sexual harassment and hostile working environment from Postmaster Padro.

8. On June 18, 2016, Plaintiff filed a formal EEO Complaint of Discrimination in the Postal Service, due to sexual harassment and hostile environment which assigned number 4B006-0027-16.

9. On December 16, 2016 Plaintiff seek pre complaint counseling against Postmaster Padro alleging retaliation for her participation in the EEO activity referred to in paragraph 8 and 9 of this complaint.

10. On January 12, 2017 Plaintiff filed EEO Compliant of Discrimination in the Postal Service due to retaliation. Case number assigned to the complaint was 4B-0006-0013-17.

11. On August 8, 2018, the EEO render a final agency decision dismissing Plaintiff EEO complaints above referred to and advising Plaintiff of her right to file a Civil Action within 90 calendar days of received of the Postal Office final decision.

12. Plaintiff had exhausted her rights under the EEO procedures.

### IV. FACTS

13. At all times relevant to the facts of this complaint, the plaintiff was employed as a full time regular (FTL) Sales, Services/Distribution Associate (SSDA) at Toa Alta Post Office in Toa Alta, Puerto Rico.

14. At all times relevant to the facts of this complaint, Postmaster Héctor Padro was plaintiff Supervisor.

15. Around March 2014, Plaintiff began noticing displeasing and uncomfortable gestures performed by Postmaster Padro while staring at Plaintiff at his office.

16. Approximately on April 7, 2014 Plaintiff entered Postmaster Hector Padro's office to inform him about a customer related matter. Postmaster Padro was sitting behind his desk with a disrespectful and ''daydreaming'' expressions on his face and said *'What huh?''* Postmaster Padro continued *''Did you say something?''* And *''Can you repeat that again?''* While in the meantime, Plaintiff spoke clear enough for him to understand her. Postmaster Padro stared straight at Plaintiff and then spoke in a slower and softer tone of voice *''what were you saying? ''* and said *''come closer inside the office''* while Postmaster Padro was standing up from his chair simultaneously lifting his arm halfway, waist high moving his hand in an inward motion as for Plaintiff to move near him. Plaintiff did not move forward but felt awkward and tried to ignore it and spoke to him about the customers issue and left the office.

17. On or about April 28, 2014 when Plaintiff entered to work and hit the Begin Tour in the morning, right after clocking, Postmaster Padro walked from his office toward Plaintiff to the clock to greet her with a cheek kiss, but only to be very near her mouth almost touching her lips by the corner of them and Postmaster Padro said *''Good morning''*. Plaintiff did not respond nothing to him, feeling ashamed, wrong and very disrespectful.

18. Approximately on June 11, 2014 again when Plaintiff entered to work after hitting the Begin Tour in the morning, right after passing the timecard, when Plaintiff turn back to commence her shift, Postmaster Padro was standing there a couple of feet from Plaintiff and extended his hand to grab and give her a handshake while with the other hand he pulled Plaintiff towards him into a hug in a very displeasing and depraved manner of Postmaster Padro touching and feeling his chest strongly against her chest

4

and he said *"Good morning, come here"*. Plaintiff tried to pull back as quick as possible. This shocked and disconcerted Plaintiff completely.

19.  On or about July 8, 2014 while Plaintiff entered inside Postmaster Padro office and he was sitting in his desk, they had finished discussing a work-related matter. He commenced displaying a degenerated and displeasing facial expression and insisted in taking a picture of Plaintiff (after other previous attempts) for his cellular phone. Postmaster Padro said *"Come here quick, just let me take a picture of you"*. Plaintiff responded *"No, stop it, I don't like it, I don't want you taking pictures of me"*, making Plaintiff feel very uncomfortable. Postmaster Padro then held his cellular in his hand, positioning it as to take a picture while Plaintiff was covering her face with her hand. In that moment, coworker Ivette Appleton entered the office, witnessed and saw this and said something about the customer outside waiting. Plaintiff quickly used the opportunity and left the office and returned to her window as well as Mrs. Appleton. Days after Postmaster Padro continued to ask to take pictures of Plaintiff, still even though she had said no. Mrs. Appleton is also a SSDA clerk.

20.  Near August 11, 2014 after various efforts from Postmaster Hector Padro inviting Plaintiff out to lunch, which she found very inappropriate and disrespectful after many responses from her telling him *"I'm not hungry today"* or *"I got plans"*. On this day after Postmaster informed Plaintiff of her lunch time earlier that day, when she clocked her timecard out to lunch, he walked beside Plaintiff and asked her "where are you going to eat?" he said *"lets go out and eat"*. Plaintiff firmly responded him *"Im not going out to lunch with you"* and turned away and walked out to lunch. Still further on he made more attempts inviting Plaintiff out to lunch.

5

21. Postmaster Padro commenced making different comments about plaintiff's physique and attributes. On approximately September 3, 2014, plaintiff had just come out of the lady's restroom which is close by the supervisors' desk where Postmaster Padro was sitting at. Plaintiff sat to do some work in the registry/clerk desk, which is right between the supervisor's desk and the lady's restroom. He started to make comments saying *"How did you come out so pretty?"* Plaintiff responded *"My mom and dad"*. He then stood up from the chair of the supervisor's desk and stepped over to her desk and sat midway right on top of the desk, with his feet on the ground floor and said to Plaintiff *"I love your freckles and your birthmarks, especially those around your neck"* he said this while pointing at Plaintiff's birthmarks with his index finger about to touch her neck until she moved abruptly backwards away from him to avoid him touching her. Plaintiff felt as if violated, said nothing else, tried to ignore him and continued attempting to do her work very upset and unsettling.

22. On or about November 17, 2014, Plaintiff was walking on the work floor coming from the letter carriers section walking towards the window area and Postmaster Padro was coming from the window area and passed by and stopped in front of her and paused assuming he was going to say something to her before working the window, but he said *"come here"* and passed his hand through plaintiff's side bangs touching and caressing it slowly up to the tip of her hair, out of her face; while saying *"that's better"*. It disturbed Plaintiff so much and was so startled that advanced to her window area feeling disgusted.

23. The names and job titles for each employee Postmaster Padro allowed to listen to music out loud were Emmanuel Tirado, Karen Matos and Ruben Sierra.

6

24. During the period on and around April 27, 2015 Postmaster Padro had Plaintiff excessively working alone as opening clerk in a five 5 minute time limit because he sent her to her first break from 7:15-7:25 and had to open at 7:30 am the door to the customers and prior to this break, could not set up the window area opening before because he had Plaintiff distributing and sorting parcels. Plaintiff found it very unfair, overwhelming and inequitable when other employees, including herself in the past, have had at least 15 minutes to set up opening the office. Opening the unit involved many tasks as: looking for and setting incoming mail tubs, identifying some numbers and hanging each sack. Logging in, signing in and opening unit in the POS system. Getting and setting her cash drawer, getting her stamps and envelope products and to open both vaults with combinations to be able to get the drawer and products (Even though this task corresponded to the superiors). Plaintiff also had to refill up the supplies needed in the post office lobby and finally look for the key and open the locked door for customers entry at exactly 7:30 am; all of this in a 5-minute time limit. This again was part of Postmaster reprisals towards Plaintiff to punish and make her feel stressed out while rushing her to do all this no mistakenly done on time before opening the office right of at the beginning of the day. Postmaster Padro purposely did this also to affect Plaintiff's 10 minute break because he knew she was responsible enough to do all these tasks while sacrificing and giving up her rightfully 10 minute break that was unable to do so for many consecutive days because she had to do everything in an efficient and timely manner to open the doors to the customers. Plaintiff felt disappointed and frustrated.

25. Plaintiff was left working standing up all day for many consecutive days. She was standing up attending customers with the long line all day at the window area, and also all the different operations that required her to sit in a chair, which she previously been used to work on (eg: pars, registry, clerk duties and or doing 2nd notices) had ceased since approximately April 6, 2015, making her feel overwhelmed and exhausted many times.

26. On or about April 27, 2015, plaintiff came forward to Postmaster Padro and communicated him that *"I do not appreciate your snappy tone and manner when you said 'you need to call the system for 3 units late"*. She asked him also '*"why the last minute lunch changes, and the unjust break changes?"* Plaintiff told him '*"this is not contributing in promoting a harmonious and safe environment for me"* Postmaster Padro just stared at her and with a bully response, all he yelled at Plaintiff was '*"I can also take the stools away!"*. Disturbed and confused, Plaintiff continued the day under stress.

27. Postmaster Padro spoke in a snappy and disrespectful way to Plaintiff many times in addition. On around May 6, 2015, that Plaintiff can recall, she went to Postmaster Padro's office. He was alone sitting behind his desk and she asked him *"I need assistance and to ask you something about the new RSS system"* and in a brusque, rude tone he responded '*"they gave that in the training"*. He just kept in his desk said nothing more and Plaintiff returned to the window area frustrated, hopeless and discouraged with no one else there to help her again.

28. Approximately on May 11, 2015, Plaintiff heard Postmaster Padro making derogatory and harmful comments about her person to coworker Luz Ivette Appleton,

SSDA clerk saying ''*she is going to regret having talked to the union, 'I won't rest until she has to leave! I'm gonna see if she has more reasons to talk to the union*''. Then he added '' *I'm not gonna let her sit for nothing and leave her standing up until her legs(in spanish 'patas' referring to animal legs) are broken*'' in a scolding tone. All this was said while Plaintiff was not seen by them in the parcels staging area passageway and they were speaking this while Postmaster Padro was at the supervisors desk and Luz Ivette Appleton was sitting at the registry clerks desk. Plaintiff felt threatened and horrified hearing this.

29. During the period of May on various occasions, and on or about May 16, 2015 Postmaster Padro observed Plaintiff in an overbearing and stalking fashion. He stood very close to her back since her Begin Tour that day and he guarded and followed her looking right over her shoulder every move silently. He also stared straight at her while she was working during the 079 operation distribution area. Even when Plaintiff went to the restroom he slightly walked towards the supervisor desk and made her feel extremely nervous and difficult to concentrate being stalked by him while working.

30. Approximately May 16, 2015 in the morning, Plaintiff was sent by Postmaster Padro to work alone at the PO Box section while Postmaster Padro reunited the rest of the coworkers to hold a birthday gathering for coworker Emanuel Tirado. She was not called for nor included by Postmaster Padro, neither any of the employees to join in. Postmaster Padro disunited and segregated her from everyone else, excluding Plaintiff once again to humiliate her. He drained her to a point of isolation working at the Toa Alta Post Office.

31.    On approximately May 19, 2015, Plaintiff had returned from lunch time and Postmaster Padro was waiting Plaintiff by the time clock, and as she clocked in from lunch, Postmaster Padro yelled at her *''why did you hit at this time!?''* She explained to him *''you gave me a service talk to read right before my 5 minute washup before lunch, therefore I took my 5 minute washup after I finished reading the service talk information so I finished leaving to lunch later and for that reason I returned later than usual back from lunch''*. He did this on purpose on more than this occasion for Plaintiff to lose her washup breaks which she was entitled to, whenever he had the chance, just to bully Plaintiff. He yelled again at her after he response *''you have to go at the time I say so!''* Plaintiff was oppressed.

32.    On around near a similar date to May 19, 2015, Plaintiff was working at the window area and spoke back to the PO Box section area to no one in specific because she knew some of my clerk coworkers were working there; to simply remind them and said ''Remember to scan PO Box uptime before 11 am''. Postmaster Padro came from the back area agitated towards Plaintiff up to the window area bullying her in front of the customers yelling at her '' you do not have to do that! You are not a distribution clerk!'' (which in reality she is, her job title is Sales Service and Distribution associate). Plaintiff kept quiet continued working with the customer in front of her perplexed, lost and ashamed, tears came out of her eyes and even the customer she was handling commented about being surprised and shocked about how inappropriate his behavior was.

33.    On or about June 17, 2015 while Plaintiff was at the window area awaiting for customers in between to attend, she heard coming from the back area Postmaster

10

Padro speaking loudly and clear to either coworker Karen Matos PSE clerk or Ivette Appleton SSDA clerk (which both were present that day not working nor assisting with parcel pickups at the window) and said ''don't help those bitches'' (referring to me and Zoraida Vargas -SSDA clerk, which at that moment was present at the window working) *''Let them screw themselves and break their legs '*. Plaintiff continue window duties stressed out, demoralized, not tranquil nor safe the remaining of the day.

34.    Near the date of June 17, 2015, at a certain time Plaintiff was working alone at the window area with an excessive line of customers, she went back to the clerk's desk where Ivette Appleton worked and asked her to assist Plaintiff with picking up 3849 notices for parcel pickups and she responded that Postmaster Padro had given her instructions not to help Plaintiff, leaving her again with the excessive workloads and attempting to create a conflict between her and the coworkers. Hearing this from her made Plaintiff feel excluded and depressed.

35.    Near about October 15, 2015 on again another act of bullying and outrage from Postmaster Padro occurred. Plaintiff was voluntarily picking up empty equipment and organizing them from the dispatch area inside to a GPC located inside the letter carrier's casing area. Postmaster Padro came practically running hysterically with his body language towards Plaintiff outside at the dispatch area yelling at her *''Stop it! Stop what you're doing with the tubs! It's a waste of time putting them inside to bring them back outside!''*. Plaintiff literally stopped and dropped the tubs off her hands frightened of his aggressive attitude and left his side stunned and went inside to work on something else.

11

36. On a rush busy day near Christmas day, near December 22, 2015, around closing time, Plaintiff was alone at that point in the window, even though supervisor Calero was close to the area, Postmaster Padro picked up a priority flat rate envelope that she had processed and slammed the envelope in a violent and rude manner against the counter she worked at, harassing her and with a snappy tone yelled *"this is not flat, you can't charge this with a flat price!"*. Plaintiff responded *"up to where I understand that specific envelope seemed fine"*(She had previously asked and verified with supervisor Francisco Calero about that precise envelope). Postmaster Padro with an irritable loud voice asked her *"who told you this?!"* She answered *"the computer but if you'd rather give me the procedures in writing"* Postmaster Padro yelled back *"I don't have to give you anything!"*. Plaintiff froze said nothing in a state of panic and anxiety and worked nervously thinking he is going to try and give her a letter or PDI discipline on not following procedures or something.

37. Near around February 22, 2016 Plaintiff is walking towards the restroom and Postmaster Padro was at the supervisor's desk and Ms. Appleton, SSDA was at the clerks desk when she heard him make and offensive and derogatory comment saying to her as Plaintiff entered the restroom *"look at her, she doesn't even bath, all dirty with her henna"* referring to her henna paintings that she had done on her hands. Plaintiff was mentally and emotionally hurt by his prejudiced comments about her.

38. On or about April 13, 2016 while Plaintiff was working at the window area upfront together with coworker Ms. Appleton SSDA, she heard from the back clearly Postmaster Padro speaking out loud to another coworker, for her to clearly listen him speak in a sarcastic and mischievous way commenting (as referring to Plaintiff and Ms.

12

Appleton) *"he who laughs last, laughs best, wait until I give them their letters "* as to intimidate and torment her with this comment. Then on April 30, 2016, Postmaster Padro notified Plaintiff by a written letter on the Abolishment of her Bid Position.

39.    On May 4, 2017, Plaintiff made contact with EEO Complaints Investigation on Amy R. Gentry during her investigation on Agency case number: 4B-006-0013-17. Plaintiff sent an email (copy of email is provided) on the continuous retaliations from Postmaster Padro's part to harass Plaintiff by his patterns of mischievous actions against her for testifying against him in previous case  EEO case no. 4B-006-0027-16. Included were (2) two grievances filed for his actions committed on September 24, 2016 by not recognizing her seniority between temporary movements accommodating a PSE Karen Matos instead of her as senior. Also, his mistreatment against Plaintiff by given her late last minute breaks and unreasonable lunch time. This all denotes his persistence on condemning and maltreating Plaintiff to the extent of producing a state of distress and nervous tension that has affected her mental stability. None of the above said nor the email communications between Ms. Amy R Gentry were included nor considered in the case no. 4B-006-0013-17.

40.    During the period of approximately October 27, 2016 through November 7, 2016 Acting supervisor J. Velez evaluated Plaintiff's window clerk performance as an SSDA. This evaluation is normally done once a year if so. On this occasion Mr. Velez evaluated her for a couple consecutives days while working with the customers. At one point Plaintiff asked her *"Are you evaluating me again?* She responded *"Infinitely, every day as per Postmaster Padro"* at another moment she said *'"you're evaluating me with this long line"* she said *"I'm following instructions"*. Plaintiff told her *" that's incorrect , no*

13

*supervisor has done it like that before''*. She answered *'' I can do this one''* and Plaintiff said *"you know your harassing me through Postmaster Padro, he is using you to harass me"*. She stayed quiet and left approximately 2 minutes later. Plaintiff cannot recall if there were any other coworkers working at the window with her during this time. Plaintiff was disturbed and bothered by this action, she knew she was continued to be aimed and pursued at her by Postmaster Padro as if he was looking for a fault from Plaintiff's part to castigate her, when these evaluations are hardly ever done.

41. On April 16, 2018, Plaintiff was personally handed a letter from Vega Baja Postmaster Cabrera to report to the Toa Alta Post Office. On consecutive days later, she received a total of (4) four letters requesting her to report to the Toa Alta Post Office. Plaintiff found this insistence perturbing and as an act of oppression and hostility towards her with the burden of making her report there. On April 19, 2018, Plaintiff sent an email to Postmaster Cabrera and the upper management explaining the undue pressure against her by instructing her to return to Toa Alta, while the harasser she's accusing is presently working there and holds the position of power at the site which is Postmaster Padro while in the middle of the ongoing case. On April 20, 2018 Postmaster Cabrera approached and asked Plaintiff an event of inmaterial questions such as: *"At what time she clocked out and finished my day?";"If she had sent the email during working hours?":"Did she email her letter from a work computer?"*

42. He told Plaintiff he was asking her this as per Mr. Jose Marengo's request (former Toa Alta Postmaster, presently at that moment he was Postmaster Padro's superior) He then said to Plaintiff Postmaster Padro had told management that the case was dissolved therefore she should return to the Toa Alta Post office. The way Plaintiff

14

perceived this, Postmaster Padro premeditatedly distorted the truth intentionally knowing the case was still in the discovery proceedings. Without any response to the email Plaintiff sent, she was astonished how this had become a reason to discipline her and punish her again for claiming her rights. As if this is what will be waiting for Plaintiff by returning to the Toa Alta Post Office, the constant harassment, hostility, reprisals and fear for her safety and unhealthy environment for her and my coworkers working under Postmaster Padro.

43.   On April 19, 2018 approximately at 5:18 p.m afternoon during plaintiff wash up time at the Vega Baja Post Office before her end of tour shift, Plaintiff sent an email from her cell phone to Postmaster Carlos Cabrera and various people from the upper management explaining the undue pressure against me and the non compliance of the USPS Pub. 552 of instructing her to return to her duties at the Toa Alta Station while the harasser working there holds the position of power at the site.

## FIRST CAUSE OF ACTION

## HARASSMENT-HOSTILE WORK ENVIRONMENT:

44. Plaintiff incorporates paragraph 1 to 44 as if literally transcribes. Harassment of an employee that will not occurred but for employees/s race, color, sex, national origin, age, disability or religion if on lawful if it is sufficiently sever of pervasive.

45. Plaintiff belongs to a statutorily protected class; was subjected to unwelcome, verbal and physical conduct involving the protected class; the harassment was based on her statutory protected class and had the purpose or effect of unreasonably interfering with her work performance and creating an intimidating

15

hostile or offensive work environment. There is a basis of imputing liability to an employer.

46. The conduct complain by the Plaintiff was not welcome and it was sufficiently severe and oppressive to create a hostile work environment.

47. Due to the fact that a tangible action of employee is involved, the agency is strictly liable.

48. Plaintiff suffered a tangible employment action when her position was abolished: her schedule hours were changed; she was not allowed to use a stool; and her Postmaster performed unwelcome and hostile non-working related actions to her.

49. Plaintiff suffered damages as a result of the harassment- hostile work environment.

## SECOND CAUSE OF ACTION

### RETALIATION:

50. Plaintiff engaged in a prior EEO's protected activity; Mr. Padro was aware of the activity; Plaintiff was subsequently disadvantaged by the adverse actions performed by Mr. Padro, which had a casual link to the protected activity.

51. Plaintiff suffered a retaliation due to her prior EEO activity, so she is entitled to be compensated for her damages.

### IV. DAMAGES

52. Plaintiffs repeat and restate the allegations contained in paragraphs one (1) through fifth one (51) of this Complaint as if fully set forth herein.

53.   As a consequence of the harassment hostile work environment, Lorreyne Ramos has suffered great emotional distress and mental anguishes caused by Defendant's discrimination. Damages are estimated in no less than $300,000.

54.   As a consequence of the retaliation suffered by plaintiff, Lorreyne Ramos suffered great mental anguishes caused by Defendant's discrimination. Damages estimated in no less than $300,000.

**WHEREFORE**, it is respectfully requested that judgment be entered against the defendant in a sum in excess of $600,000, plus costs, expenses and a reasonable amount of attorney's fees.

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico this November 5, 2018.

*S/ MARCOS VALLS SANCHEZ*
U.S.D.C. 203806
Attorney for Plaintiff
PO Box 363641 San Juan, P.R.
00936-3641
Tel.  (787) 922-8400
E-mail: marcos.valls@vallslegalfirm.com